IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| **Glynndeavin von Fox,** | ) | **Case No. 2:16-cv-186-RMG-MGB** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| **The Ritz Carlton Corporation,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

Pending is the *pro se* Plaintiff's "Motion for Leave to Proceed *in forma pauperis*" ("IFP"). (DE# 3). In the fourteenth of many civil actions recently filed by Plaintiff in this Court, Plaintiff sues the Ritz Carlton Corporation.[1] Pretrial proceedings in this action have been referred to the assigned United States Magistrate Judge. Pursuant to Local Civil Rule 73.02(B)(2) (D.S.C.), the Magistrate Judge is authorized to review the complaint and to submit findings and recommendations to the District Judge.[2] Upon review, the Magistrate Judge recommends that the Plaintiff's motion to proceed IFP be **denied** and that the case be **summarily dismissed** for the following reasons:

**I.  Relevant Law**

    **A. Liberal Construction for *Pro se* filings**

This Court is required to liberally construe *pro se* documents, *Estelle v. Gamble*, 429 U.S. 97 (1976), holding them to a less stringent standard than those drafted by attorneys, *Hughes v.*

---

[1] See D.S.C. Case Nos. 2:16-cv-98; 2:16-cv-106; 2:16-cv-131; 2:16-cv-132; 2:16-cv-136; 2:16-cv-179; 2:16-cv-180; 2:16-cv-181; 2:16-cv-182; 2:16-cv-183; 2:16-cv-184; 185; 2:16-cv-186; 2:16-cv-197; 2:16-cv-188; 2:16-cv-209; 2:16-cv-225; 2:16-cv-227; 2:16-cv-228; 2:16-cv-394.

[2] The Fourth Circuit Court of Appeals recently held that an order denying leave to proceed IFP is the "functional equivalent" of a dismissal, and thus, is outside the scope of a magistrate judge's authority. *Hunter v. Roventini*, 617 F. App'x 225, 226 (4th Cir. 2015) (unpublished).

*Rowe*, 449 U.S. 5 (1980) (per curiam). ). The liberal construction afforded *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim, it should do so, but a district court may not rewrite a complaint to "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986). The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Dep't. of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

### B. Applications to Proceed IFP

A plaintiff may pursue a civil action in federal court without prepayment of the filing fee if he submits an affidavit containing a statement of his assets and demonstrates that he cannot afford to pay the required filing fee. 28 U.S.C. § 1915(a)(1). The purpose of the IFP statute is to assure that indigent persons have equal access to the judicial system by allowing them to proceed without having to pay the filing fee. *Flint v. Haynes*, 651 F.2d 970, 973 (4th Cir.1981), *cert. denied*, 454 U.S. 1151 (1982). A plaintiff does not have to prove that he is "absolutely destitute to enjoy the benefit of the statute." *Adkins v. E.I. Du Pont de Nemours & Co.*, 335 U .S. 331, 339 (1948).

An affidavit to proceed IFP is sufficient if it states facts indicating that the plaintiff cannot afford to pay the filing fee. *Adkins*, 335 U.S. at 339. If a court determines at any time that the allegation of poverty in an IFP application is not true, then the court "shall dismiss the case." 28 U.S.C. § 1915(e)(2)(A); *and see, e.g., Justice v. Granville Cty. Bd. of Educ.,* 2012 WL 1801949 (E.D.N.C. May 17, 2012) ("dismissal is mandatory if the court concludes that an applicant's allegation of poverty is untrue"), *aff'd by*, 479 F. App'x 451 (4th Cir. Oct. 1, 2012), *cert. denied*, 133 S.Ct. 1657 (2013); *Berry v. Locke*, 2009 WL 1587315, *5 (E.D.Va. June 5, 2009) ("Even if Berry's misstatements were made in good faith, her case is subject to dismissal because her

allegation of poverty was untrue"), *appeal dismissed*, 357 F. App'x 513 (4th Cir. 2009). Prior to statutory amendment in 1996, courts had discretion to dismiss a case if it determined that an allegation of poverty was untrue. *See Denton v. Hernandez*, 504 U.S. 25, 27 (1992). The 1996 amendment changed the words "may dismiss" to "shall dismiss." Mandatory dismissal is now the majority view, and district courts in the Fourth Circuit have adhered to the majority view. *See, e.g., Justice*, 2012 WL 1801949, *6 n.5; *Staten v. Tekelec*, 2011 WL 2358221, *1 (E.D.N.C. June 9, 2011); *Berry*, 2009 WL 1587315, *5.

## II. Discussion

### A. IFP Not Warranted

In his IFP motion dated January 12, 2016, Plaintiff indicates that he is employed by "Fox Consulting Firm, LLC" and that his "take-home pay or wages" are $1,200.00 monthly. (DE# 3, ¶ 2). On the printed form, he checks boxes indicating that in the past 12 months, he has received income from (a) business, profession, or other self-employment; (b) rent payments, interest, or dividends; (d) disability or worker's compensation payments; and (e) gifts or inheritances. (*Id*. ¶ 3). Plaintiff explains that the amount he received for (a) was $50.00; (b) $1,200.00; (d) $1,200.00; and (e) $500.00. (*Id*.). He indicates that he has $800.00 in his bank account. (*Id*. ¶ 4).[3] Plaintiff also indicates he has assets valued at $140,000.00. (*Id*. ¶ 5).

Plaintiff indicates he has no expenses for "housing, transportation, utilities, or loan payments, or other regular monthly expenses" and no debts or other financial obligations. (*Id.* ¶¶

---

[3] Plaintiff's various IFP motions in his 2016 lawsuits indicate bank account balances between $1,000.00 and $300.00. The Court may properly take judicial notice of such records. *See Philips v. Pitt Cty. Mem. Hosp*., 572 F.3d 176, 180 (4th Cir. 2009) (courts "may properly take judicial notice of matters of public record."); *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("the most frequent use of judicial notice is in noticing the content of court records"). Also, the Court takes judicial notice of the fact that Plaintiff has filed numerous cases in the state courts, which have also denied him permission to proceed IFP and summarily dismissed the cases. *See, e.g.,* Charleston County Circuit Court Case Nos. 2016CP1000297; 2016CP1000320; 2016CP1000321; 2016CP1000322; 2016CP1000352; 2016CP1000515; 2016CP1000516.

6, 8). Plaintiff indicates he has monthly income of $1,200.00, assets of $140,000.00, and no debts or other monthly expenses, which suggests that he has the ability to pay the filing fee. *See, e.g., Justice,* 2012 WL 1801949, *3 (denying IFP status where plaintiff indicated he owned real and personal property with a total value of $113,500.00 because "the benefit of filing IFP was not intended to allow individuals with significant real and personal property interests to avoid paying a filing fee of $350.00 in each case"). In his Complaint, Plaintiff also indicates that in 2013 he travelled to Japan, stayed in a $900.00 per night executive suite, had stayed in other five star hotels, rented a Mercedes automobile, wore his Ralph Lauren Black Label suits, and dined on Kobe beef, sushi, and plum wine. (DE# 1 at 4-7). Taken as true, these are not the spending habits of a person unable to afford a filing fee.

Based on the record presently before the Court, it appears that Plaintiff can pay the filing fee. This case should therefore be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(A). *See also Justice,* 2012 WL 1801949, at *5 (denying IFP status because plaintiff could pay the filing fee and dismissing four civil lawsuits by the same *pro se* plaintiff); *Thomas v. GMAC*, 288 F.3d 305, 306 (7th Cir.2002) ("Because the allegation of poverty was false, the suit had to be dismissed; the judge had no choice."); *Cabbil v. United States*, Case No. 1:14-cv-04122-JMC-PJG, 2015 WL 6905072, *1 (summarily dismissing without prejudice; plaintiff not entitled to proceed IFP); *Willingham v. Cline*, 2013 WL 4774789 (W.D.N.C. Sept. 5, 2013) (same).[4]

### B. The Complaint Fails to Set Forth a Basis for Subject Matter Jurisdiction, Fails to State a Claim, and is Legally and Factually Frivolous

---

[4] When denying leave to proceed IFP, the dismissal may be with or without prejudice, in the court's discretion. See *Staten*, 2011 WL 2358221, *2 (indicating that dismissal with prejudice "for an untrue allegation of poverty … is appropriate only when the applicant intentionally misrepresented his … financial condition, acted with bad faith, and/or engaged in manipulative tactics or litigiousness"); *Berry*, 2009 WL 1587315, *5 (same, citing *Thomas*, 288 F.3d at 306-308); *In re Sekendur*, 144 F. App'x at 555 (7th Cir. 2005) ("a court faced with a false affidavit of poverty may dismiss with prejudice in its discretion"). While Plaintiff appears "litigious," the record does not establish that Plaintiff "intentionally misrepresented his financial condition." Rather, the facts in his affidavit simply do not indicate that he is entitled to proceed IFP. Hence, dismissal without prejudice is appropriate.

In addition to not being entitled to proceed IFP, Plaintiff has filed a Complaint that fails to set forth any basis for federal subject matter jurisdiction, fails to state a plausible claim for relief, and is factually and legally frivolous.

Plaintiff's allegations against the defendant make little sense. (DE# 1 at 4-8). In his Complaint, Plaintiff relates a long rambling story about his 2013 trip to Japan. Throughout his narrative, he relates numerous odd and irrelevant details. In his own words, Plaintiff alleges the following:

> I ate and worked out of several areas of the hotel, as I always have done in every other five star hotel that I have ever been in. I mixed with the staff at the club level with no issues, swam at the pool with minimal issues regarding skin markings, used the spa with no issues, and used the business center for meetings with no issue. The issues began when I went to the Imperial Palace for the inauguration of the Ambassadors in 2013, and returned with an older Japanese man as my taxi driver with a normal Asian haircut, large chrome sunglasses, and normal Asian build. I returned with enough time to dine for lunch on Kobe beef and plum wine at the hotel, and returned to my room to finish an issue with the College of Charleston and the US Department of Education for a complaint through the Department of Justice. This is detailed in the filing that I have made along with this one, and the understanding of the College of Charleston's intent on my grading for a Central Intelligence Agency clandestine service application from a recruiting seminar at the College of Charleston on April 10, 2012. I made arrangements through the club level to have a member of Sushi Chef of the Ritz Carlton team go with me to Tsukiji market on 14th of February, 2016 (I did not receive the final bill, and the names on the bill or appointment is not in my possession). After that appointment was set from the club level, I started to have issues with the staff when I went down to try some Unagi prepared in various manners at Hinokizaka Sushi restaurant in the hotel. I had a bottle of Reisling (Dr. Loosen) sent over from lunch at Azure 45, and had a couple glasses of wine with the Unagi. I had an interest in the way in which the Japanese through the Shinto faith enjoy whale meat, and had a conversation with the head sushi chef that was accompanying me to Tsukiji market the next day. I had went (sic) back to my room briefly to get my laptop to show the kind of whale meat that would at Tsukiji market to inspect. I have never seen whale meat before, but when I showed the Head Sushi chef he got upset with me and called the General Manager Robert Sexton into the sushi restaurant. Me (sic) and Mr. Sexton had a heated exchange of words regarding the guest

> and staff policies at the Ritz Carlton LLC, and I informed him that I was not the person that established the appointment with the head sushi chef, that the woman at the club level set that appointment up (Tall 6 foot two, slender Japanese woman with long black hair in a bun). Mr. Sexton continued to harass me after I told him I was finishing my food and drink…I told him that I would let him know when I finished the food and drink in the 900.00 dollar a night suite that I was staying in. I finished my food and drink, started back to my suite, and Robert Sexton followed me to the elevator talking demanding to me, acting very angry, and at the same time never asked me to leave the hotel …As I was leaving the next day to catch a flight back to the United States, …Mr. Sexton did not ask me to leave and I did not get an email from Ritz Carlton Corporation telling me to leave the hotel. I arrived down at the lobby, and Mr. Sexton was there with one Japanese national (Small petite woman with black cocktail cut.) and a French national (I met her at Azure 45 for lunch, and she is around 6 foot with red hair), he said that he had a car waiting for me….as soon as the elevator closed Mr. Robert Sexton started grabbing me with the other Japanese national…I drank some lemon water, decided what to do next, and then I had a normal person appear in normal clothes as a Japanese national. He looked at me in the lobby hallway area, and tried to grab me. …He approached me, and I defended myself with my umbrella…After I went through the immigration issue with the Japanese I found out he was an employee of the Ritz Carlton Tokyo. These are the issues that I have with the Ritz Carlton Tokyo….I have no idea why these people were trying to keep me from accessing the US Embassy in Tokyo, Japan for an emergency declaration given to them on audio and video camera throughout the five star hotel, in all of the elevators, and with all of the outside video and audio.

These allegations are illogical, nonsensical, incomprehensible, and appear to be the "ramblings of a troubled mind." *See, e.g., Arledge v. Hall,* 2006 WL 1518915, *1 (S.D.Ga. May 31, 2006) ("these various complaints are utterly fanciful and are clearly the product of a troubled mind that is … having difficulty grappling with reality"). A district court may not rewrite a complaint to "conjure up questions never squarely presented." *Beaudett*, 775 F.2d at 1278. The Complaint's allegations fail to state any sort of plausible claim. The Complaint's allegations lack any basis in fact or law, and therefore, are also frivolous.

Even if liberally construed as an attempt to sue the defendant corporation under 42 U.S.C. § 1983, the Complaint fails to state a claim because private conduct is not actionable under § 1983.

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (citing *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982). Private activity is generally not "state action." *DeBauche v. Trani*, 191 F.3d 499, 506-07 (4th Cir. 1999). To state a claim under § 1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). The Complaint does not allege facts indicating that the Ritz Carlton (or any employee) was acting "under color of state law." *See Asbury v. Tartarsky*, Case No. 8:13–cv–3364–RMG, 2015 WL 1120081, *4 n.5 (D.S.C.) ("the under-color-of-state-law element …reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments"), *aff'd by* 616 F.App'x 71 (4th Cir. 2015). The Complaint fails to allege any facts indicating conduct by a state actor or that is "fairly attributable to the State."

Although *pro se* complaints are liberally construed, a plaintiff must do more than make vague and conclusory statements to state a claim. *Adams v. Rice*, 40 F.3d 72, 74–75 (4th Cir.1994); *White v. White*, 886 F.2d 721, 723 (4th Cir.1989). A plaintiff must allege facts that actually support a plausible claim for relief. *Bass v. Dupont*, 324 F.3d 761, 765 (4th Cir.2003). The present Complaint fails to do so, and therefore, summary dismissal is appropriate.

Plaintiff's Complaint is devoid of any facts or allegations that would suggest any basis for federal question or diversity jurisdiction. See 28 U.S.C. §§ 1331, 1332. The Complaint does not specifically mention jurisdiction, and its factual allegations do not indicate that this case arises "under the Constitution, laws, or treaties of the United States." *Id*. at § 1331. Federal courts are courts of limited jurisdiction, "constrained to exercise only the authority conferred by Article III of the Constitution and affirmatively granted by federal statute." *In re Bulldog Trucking, Inc*., 147 F.3d 347, 352 (4th Cir. 1998). A federal court is required, *sua sponte*, to determine if a valid basis

for its jurisdiction exists, "and to dismiss the action if no such ground appears." *Id.* at 352; *see also Carter v. Ervin*, Case No. 0:14–cv–00865–TLW-PJG, 2014 WL 2468351, *3 (D.S.C.) ("the court possesses the inherent authority to ensure that … federal jurisdiction exists"), *appeal dismissed*, 585 F.App'x 98 (4th Cir. 2014); *see also* Fed.R.Civ.P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").[5]

### C. Plaintiff Seeks Relief that is Unavailable or Inappropriate

Finally, the *pro se* Plaintiff seeks relief that is unavailable or inappropriate. (DE# 1 at 10, "What Would You Like the Court to Do"). He indicates he would like "the Court to prosecute the individuals in the matter if able to in a foreign country." (*Id.*). Plaintiff miscomprehends the function of the Court. This Court hears and adjudicates cases, it does not "prosecute" parties on behalf of another party. Plaintiff further indicates (in his own words) that "I would like to have discovery in all communications from the Ritz Carlton Tokyo to the US embassy, Tokyo, Japan, and the list of employees of the Ritz Carlton Tokyo at the time of the stay of myself from the 12th of February, 2013 to the 16th of February, 2013." (*Id.*). This Court does not conduct discovery on behalf of parties. Plaintiff is responsible for his own discovery. He further indicates that "I would like the award amount of 10.5 million USD or an equal amount in real estate in a Ritz Carlton residence penthouse within the Ritz Carlton residential system." (*Id.*). This Court does not award real estate as damages.

### III. Recommendation

---

[5] With respect to personal jurisdiction, Plaintiff appears to recognize that he cannot sue "foreign nationals," who live and work outside the United States, for an alleged tort that allegedly occurred in Japan. (DE# 1 at 10). *See Carefirst of Md., Inc. v. Carefirst Preg. Centers, Inc.*, 334 F.3d 390, 397 (4th Cir. 2003) (discussing general and specific personal jurisdiction).

Accordingly, the Magistrate Judge **RECOMMENDS** that the Plaintiff's "Motion for Leave to Proceed *in forma pauperis*" (DE# 3) be **denied**, and that this case be **summarily dismissed**, without prejudice, and without issuance and service of process.

February 12, 2016  
Charleston, South Carolina

MARY GORDON BAKER  
UNITED STATES MAGISTRATE JUDGE

The plaintiff's attention is directed to the ***Important Notice*** on following page:

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> **Robin L. Blume, Clerk**
> **United States District Court**
> **Post Office Box 835**
> **Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).